UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

MARK RUSSELL WEINERT,

      Plaintiff,

    v.                                      Case No. 21-cv-0074-bhl

CANDACE WHITMAN, et al.,

      Defendants.

---

## SCREENING ORDER

---

Plaintiff Mark Weinert, who is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants violated his civil rights at the Fox Lake Correctional Institution (FLCI). This matter comes before the Court on Weinert's motion for leave to proceed without prepayment of the filing fee, motion to supplement the complaint, and for screening of the complaint. Dkt. Nos. 1-2, 7.

### MOTION TO PROCEED WITHOUT PREPAYING THE FILING FEE

Weinert requested leave to proceed without prepaying the full filing fee. Dkt. No. 2. A prisoner proceeding without prepayment of the filing fee is required to pay the full amount of the $350.00 filing fee over time. *See* 28 U.S.C. §1915(b)(1). Weinert filed a certified copy of his prison trust account statement for the six-month period immediately preceding the filing of his complaint, as required under 28 U.S.C. §1915(a)(2). Dkt. No. 3. The Court assessed, and Weinert has paid, an initial partial filing fee of $15.60. Dkt. No. 5. The Court will grant Weinert's motion for leave to proceed without prepaying the filing fee.

## MOTION TO SUPPLEMENT THE COMPLAINT

Weinert filed a motion to supplement the complaint. Dkt. No. 7. He asks to add eight additional factual allegations to his original complaint. *Id*. The Court will grant the motion and will address the allegations below.

## SCREENING OF THE COMPLAINT

The Court has a duty to review any complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity, and dismiss any complaint or portion thereof if the prisoner has raised any claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b). In screening a complaint, the Court must determine whether the complaint complies with the Federal Rules of Civil Procedure and states at least plausible claims for which relief may be granted. To state a cognizable claim under the federal notice pleading system, a plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2). It must be at least sufficient to provide notice to each defendant of what he or she is accused of doing, as well as when and where the alleged actions or inactions occurred, and the nature and extent of any damage or injury the actions or inactions caused.

"The pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. A complaint must contain

sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 556. "[T]he complaint's allegations must be enough to raise a right to relief above the speculative level." *Id*. at 555 (internal quotations omitted).

## ALLEGATIONS

Weinert is an inmate at FLCI. Dkt. No. 1 at 1. Defendant Candance Whitman is Health Service Unit (HSU) manager at FLCI; and defendant Lisa Albrecht is HSU assistant manager at FLCI. *Id*. at 1-2. Weinert also names as defendants "John and Jane Does to be identified during the discovery process." *Id*. at 1. All defendants are sued in their individual capacities. *Id*.

In early November 2020, Weinert was assigned to D-wing in Unit 1. *Id*., ¶1. At the time, D-wing was on "quarantine status" due to the Covid-19 pandemic. *Id*., ¶2. Whitman and Albrecht arrived on the unit and went door to door to tell each of the 38 inmates on the wing the result of their Covid-19 test. *Id*., ¶3. Weinert, along with 23 other inmates, tested negative but about 15 inmates tested positive. *Id*., ¶¶4-6. After telling each inmate their test result, Whitman and Albrecht abruptly left; they did not make any provisions for immediately isolating the inmates who tested positive for Covid-19 nor did they make any provisions for isolating Weinert, who has pre-existing medical conditions. *Id*., ¶¶7, 36-37. Weinert states that he is 65 years old, has heart disease, is morbidly obese, has vertigo, has hepatitis C, and has multiple other medical and psychological issues. *Id*., ¶¶36-37. He states that both Whitman and Albrecht "ha[d] easy access to [his] medical records…[and] would have known that [he] was in the high-risk category for serious complications." *Id*., ¶13.

3

Weinert states that he had to continue sharing common spaces with the inmates who tested positive for Covid-19. *Id.*, ¶¶21-22. About a week later, during Weinert's next Covid-19 test, he tested positive for Covid-19. *Id.*, ¶33. As a result of contracting the virus, Weinert had extreme headaches, chills, fever, brain fog, muscle aches, balance problems, numbness, a rash, extreme fatigue, loss of taste and smell, sore throat, coughing fits, and tremendous anxiety and depression. *Id.*, ¶¶34-35. Weinert states that, even after testing positive, Whitman and Albrecht did not do daily temperature checks. *Id.*, ¶40. Weinert reiterates numerous times throughout the complaint that what happened to him on D-wing "is contrary to CDC guidelines" and any "reasonable" person would have followed CDC guidelines *Id.*, ¶¶8-32. He states that he is not aware of any other instances where Covid-19 positive and Covid-19 negative inmates have been quarantined together. *Id.*, ¶29.

In his supplement, Weinert notes that several of the inmates who tested positive for Covid-19 had to share a cell with an inmate who tested negative for Covid-19. Dkt. No. 7, ¶59. He states that Whitman and Albrecht did not separate these inmates either. *Id.*, ¶¶60-61. For relief, Weinert seeks monetary damages. Dkt. No. 1 at 17.

## ANALYSIS

To state a claim for relief under 42 U.S.C. §1983, Weinert must allege that he was "deprived of a right secured by the Constitution or the laws of the United States, and that this deprivation occurred at the hands of a person or persons acting under the color of state law." *D.S. v. E. Porter Cty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015) (citing *Buchanan–Moore v. Cty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)).

Weinert asks to procced with the following claims: (1) violation of CDC guidelines; (2) Eighth Amendment conditions-of-confinement; (3) Fourteenth Amendment equal protection; (4)

Fourteenth Amendment due process; and (5) state law medical malpractice. Dkt. No. 1, ¶¶8, 42, 44-45, 50. The complaint fails to state a claim upon which relief can be granted.

1. **Violation of the CDC Guidelines**

Weinert's main gripe in this lawsuit is that the defendants violated CDC guidelines. *See* Dkt. No. 1, ¶¶8-40. The Court of Appeals for the Seventh Circuit has explicitly explained that "CDC Guidelines—like other administrative guidance—do not themselves set a constitutional standard*." Mays v. Dart*, 974 F.3d 810, 823 (7th Cir. 2020). "[W]hile the recommendations of these various groups may be instructive in certain cases, they simply do not establish the constitutional minima; rather, they establish goals recommended by the organization in question." *Id*. Alleged violations of CDC guidelines do not state a federal or constitutional claim under §1983. Thus, Weinert does not have a claim with respect to his allegation that the defendants violated CDC guidelines.

2. **Eighth Amendment Conditions-of-Confinement**

Weinert asserts that the defendants imposed cruel and unusual conditions-of-confinement. *See* Dkt. No. 1, ¶¶41, 45. To state a conditions-of-confinement claim under the Eighth Amendment, Weinert must allege that: (1) the conditions were so adverse that they deprived him "of the minimal civilized measure of life's necessities;" and (2) the defendants knew about the condition and deliberately disregarded it. *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008). "Deliberate indifference ... means that the official knew that the inmate faced a substantial risk of serious harm, and yet disregarded that risk." *Id*. at 773. Negligence is not enough to state a constitutional claim. *See id*.

Weinert asserts that he faced a substantial risk of serious harm because he was a "high-risk" individual incarcerated during the pandemic. He states that the defendants were deliberately

5

indifferent towards that risk of harm because they "ha[d] easy access to [his] medical records" and should have known to immediately move him to a different location after discovering Covid-19 positive inmates on his wing.

FLCI houses over one thousand inmates, who are all facing the plight of the pandemic together. Weinert's expectation that medical staff individually review each inmate's medical file, proactively assess their Covid-19 risk category, then immediately move those individuals elsewhere in the institution is unreasonable and does not state a claim for deliberate indifference. If Weinert believed that he was at an increased risk of harm from Covid-19 due to his pre-existing medical conditions, he was required to tell the defendants about his concerns, just as he would have been required to do to receive accommodations for any other medical condition at the institution. Weinert does not allege that he spoke with the defendants or otherwise notified them about his concerns regarding his "high-risk" status, and he clearly had an opportunity to do so because he also alleges that they were literally at his cell to discuss Covid-19 results. Weinert's allegation that the defendants did not carefully review his medical file ahead of time to identify his "high-risk" status does not amount to deliberate indifference. At best, that would be negligence, which does not state a claim.

Further, the Court notes that Weinert has likely pled himself out of court by including as a part of his complaint the ICE report and appeal. *See* Dkt. No. 1 at 19-28; *see Thomas v. Farley*, 31 F.3d 557, 559 (7th Cir. 1994) ("But if a plaintiff does plead particulars, and they show that he has no claim, then he is out of luck—he has pleaded himself out of court. He is not saved by having pleaded a legal conclusion that if consistent with the facts would establish his right to relief, for he has shown that it is inconsistent with the facts."); *see also Massey v. Merrill Lynch & Co.,* 464 F.3d 642, 645 (7th Cir. 2006 )("Thus, a plaintiff may plead himself out of court by attaching

6

documents to the complaint that indicate that he or she is not entitled to judgment."). The ICE report indicates that FLCI did isolate Covid-19 positive inmates on the D-wing and it outlines the specific criteria used for reintroducing those inmates back to general population. *See* Dkt. No. 1 at 22-23. Weinert's allegation that Covid-19 positive inmates were not isolated appears to be inconsistent with documents he included with his complaint.

Weinert notes in his supplemental materials that some Covid-19 negative inmates were forced to share a cell with Covid-19 positive inmates. But Weinert does not allege that he was one of those individuals; thus, he does not have standing to bring a claim based on that allegation. In any case, the ICE appeal indicates that the institution used "all available resources within the limitations of the physical make-up of the facility." *See* Dkt. No. 1 at 27. In other words, it appears that there was no other space available at the institution to move inmates. Weinert cannot demand that inmates be moved elsewhere in the institution when there is no other space available.

Nothing alleged in the complaint amounts to deliberate indifference in light of the extraordinary circumstances facing the institution and the steps the institution has taken to isolate inmates who tested positive for Covid-19. Weinert does not state a conditions of confinement claim.

### 3. Fourteenth Amendment Equal Protection

Weinert claims that the defendants violated his right to equal protection. *See* Dkt. No. 1, ¶42. Prisoners are protected under the Equal Protection Cause from invidious discrimination. *Lisle v. Welborn*, 933 F.3d 705, 719 (7th Cir. 2019) (citing *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974)). To state a claim, a prisoner must allege that the "defendants intentionally treated him differently because of his race ... ethnicity, sex, religion, or other proscribed factor." *Id.* at 719–20 (citing *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760 (7th Cir. 2016)); *see also David K. v.*

7

*Lane*, 839 F.2d 1265, 1271–72 (7th Cir. 1988) (collecting cases and noting that discrimination must be intentional, purposeful, or have a discriminatory motive). Being a "prisoner" is not a suspect classification. *Johnson v. Daley*, 339 F.3d 582, 585–86 (7th Cir. 2003).

Weinert states, "they have denied me equal protection from a contagious disease." It's unclear what this means or how Weinert was intentionally treated differently than others similarly situated. Weinert also does not describe the basis of the discrimination, i.e., what proscribed factor caused the discrimination. Weinert instead appears to allege that everyone in D-wing was treated exactly the same. Weinert does not state an equal protection claim.

### 4. Fourteenth Amendment Due Process

Weinert claims that the defendants violated his right to due process. *See* Dkt. No. 1, ¶44. To state a claim for *procedural* due process, Weinert must allege that: (1) he has a liberty or property interest that the state has interfered with; and (2) the procedures he was afforded upon that deprivation were constitutionally deficient. *Scruggs v. Jordan*, 485 F.3d 934, 939 (7th Cir. 2007). With respect to *substantive* due process, the United States Supreme Court has stated that "plaintiffs should resort to the substantive guarantees of the Due Process Clause for relief only when there is not 'a particular Amendment [that] provides an explicit textual source of constitutional protection against a particular sort of government behavior.'" *Childress v. Walker*, 787 F.3d 433, 438-39 (7th Cir. 2015) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998)).

Weinert states that he has "a liberty interest in not having to cohort with people infected with a highly contagious disease." No such "liberty interest" has been recognized by the law. Further, the Eighth Amendment provides an explicit textual source of constitutional protection for the alleged conduct. Weinert does not state a due process claim.

8

### 5. State Law Medical Malpractice

Weinert states that the defendants committed state law medical malpractice. *See* Dkt. No. 1, ¶50. A district court may exercise supplemental jurisdiction over state law claims that "are so related to claims in the action" over which the Court has "original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. §1367(a). Supplemental jurisdiction is not appropriate merely because the claims are "tangentially related" or share a broad factual background. *See Hernandez v. Dart*, 635 F. Supp. 2d 798, 814 (N.D. Ill. 2009). "Instead, the question is whether the proof necessary for the state claim overlaps with the proof necessary for the federal claim." *Birdo v. Mathis*, Case No. 15-cv-456, 2015 WL 3948150, at *3 (S.D. Ill. June 26, 2015) (citations omitted). Weinert does not have any medical care claims in this case from which he can assert supplemental jurisdiction over related medical malpractice claims. Weinert does not state a medical malpractice claim.

Although the Court suspects that allowing Weinert to file an amended complaint would be futile, he will be given an opportunity to amend his complaint to attempt to state a claim upon which relief can be granted. The Court is enclosing a guide for *pro se* prisoners that explains how to file a complaint that the Court can effectively screen. The Court also will include a blank prisoner complaint form. The Court will require Weinert to use that form to file his amended complaint. *See* Civil L. R. 9 (E.D. Wis.). If Weinert believes he needs more space than is available in blank prisoner complaint form, he may attach a *maximum* of five typed, double-spaced pages. The amended complaint should be no more than <u>ten</u> pages total. Weinert can also voluntarily dismiss this case to avoid the possibility of incurring a "strike" under § 1915(g).

## CONCLUSION

**IT IS THEREFORE ORDERED** that the plaintiff's motion for leave to proceed without prepayment of the filing fee (Dkt. No. 2) is **GRANTED.**

**IT IS ORDERED** that the plaintiff's motion to supplement the complaint (Dkt. No. 7) is **GRANTED**.

**IT IS ORDERED** that this action is **DISMISSED** pursuant to 28 U.S.C. §§1915(e)(2)(B) and 1915A(b)(1) for failure to state a claim. Weinert may file an amended complaint consistent with this order **within 30 days of the date of this order**. If Weinert files an amended complaint by the date above, the Court will screen the amended complaint as required by 28 U.S.C. §1915A. If Weinert does not file an amended complaint by the deadline, the Court will dismiss this case on the next business day. Weinert can also voluntarily dismiss this case to avoid the possibility of incurring a "strike" under § 1915(g).

The Court includes with this order a copy of the guide entitled "Answers to Prisoner Litigants' Common Questions" and a blank prisoner complaint form.

**IT IS ORDERED** that the agency having custody of Weinert shall collect from his institution trust account the **$334.40** balance of the filing fee by collecting monthly payments from Weinert's prison trust account in an amount equal to 20% of the preceding month's income credited to his trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this action. If Weinert is transferred to another institution, the transferring institution shall forward a copy of this Order along with Weinert's remaining balance to the receiving institution.

**IT IS ORDERED** that copies of this order be sent to the officer in charge of the agency where Weinert is located.

**IT IS ORDERED** that plaintiffs who are inmates at Prisoner E-Filing Program institutions must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the Court. The Prisoner E-Filing Program is mandatory for all inmates of Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution. Plaintiffs who are inmates at all other prison facilities must submit the original document for each filing to the Court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS. It will only delay the processing of the matter.

Weinert is further advised that failure to make a timely submission may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated at Milwaukee, Wisconsin this 11th day of May, 2021.

> s/ *Brett H. Ludwig*
> BRETT H. LUDWIG
> United States District Judge